UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSE M. AGUIRRE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-30-JD-JEM |
| JEFF SIEGEL, et al., | |
| Defendants. | |

OPINION AND ORDER

Jose M. Aguirre, a prisoner without a lawyer, filed a complaint against seven defendants alleging they have failed to provide him with proper medical care for a burn he sustained to his left foot. ECF 1. He has also filed a motion for court intervention for medical treatment, which this court construes as a request for a preliminary injunction. ECF 5. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On May 1, 2024, Aguirre began working as a mainline cook in the Elkhart County Jail's kitchen where he prepared hot food for the jail population. ECF 1 at 3. To prepare the food, he used several large open flamed kettles and wore rubber boots that

were ten inches high. *Id*. He also wore an apron that barely covered his chest and stomach area. *Id*. Summit Catering contracted with the jail to provide food services. *Id*.

On May 2, 2024, he reported for work and found that the kettle that he typically used was broken and would not lock in the upright position, increasing the risk that it could tip over and spill out its contents. *Id*. He showed the broken kettle to Summit Catering Supervisor Carl Farley, but Farley instructed him to use it and be careful. *Id*. Farley contacted the maintenance department to have the kettle repaired. *Id*. Aguirre later showed the kettle to Summit Catering Supervisor Kendra, who also instructed him to use the kettle, but to be careful. *Id*. at 3-4.

On May 7, 2024, when Aguirre was working, he noticed the kettle had not been repaired. *Id*. at 4. Aguirre reported this to Farley, who told him to use it and that he would report the broken kettle to Summit Catering and the maintenance department. *Id*. He then filled the kettle with 200 pounds of beans and boiling water. *Id*. As he stirred the beans, the kettle shifted and tipped over spilling the beans and boiling water down his left leg into his boot. *Id*. He yelled as his leg was being burned and tried to get his boot off. *Id*. Other inmates rushed over to help him. *Id*. After he was carried out of the kitchen, he was able to remove his boot and could see his lower leg were blistered and his sock was stuck to his foot. *Id*.

Farley called the medical unit and helped Aguirre to the unit where a nurse put cream on his foot and wrapped it in gauze and he was given Tylenol. *Id*. at 4-5. He was then told to go back to his dorm and he would be referred to a doctor. *Id*. When Aguirre returned to the dorm, he needed help because he could not walk or wear anything on

2

his left foot. *Id*. at 5. If he tried to walk, his foot would rub against the blisters, causing them to break open. *Id*. For the next forty-five days, Aguirre was not able to work and he did not see a doctor. *Id*. His left foot was not healing and he had to crawl to use the toilet. *Id*. When he filed grievances, they were rejected and he was told to stop filing them. *Id*.

On July 15, 2024, Aguirre was told to either return to work or be fired. *Id*. He tried to work, but when he put on his rubber work boots, his boot caused his unhealed left foot to bleed. *Id*. He asked both Farley and Kendra if he could have a different job because his boots were painful and the kettle had not been repaired. *Id*. Aguirre was told that he had to return to his current job, or he would be given a conduct report, terminated, or removed from the trustee dorm. *Id*.

At some point, Aguirre states he saw Dr. John Foster, the jail's doctor. *Id*. 5-6. Dr. Foster looked at his left foot, but told him he could not help him because there were limited medical resources. *Id*. at 6. At some point, Nurse Wendy looked at his foot and told him he had a third degree burn.[1] *Id*. Aguirre sent requests to Summit Catering seeking medical treatment but Farley and Kendra would not help him. *Id*. He filed more grievances, but he was told to stop filing them and he would not receive any medical treatment. *Id*. Aguirre states he is in constant pain when he walks and, if he bends his left foot, he can feel a tearing sensation. *Id*. He has scars over sixty percent of his left foot from third degree burns that prevent him from wearing any type of shoe. *Id*.

---

[1] Aguirre has not named Nurse Wendy as a defendant in this case.

Because Aguirre is a pretrial detainee, his rights arise under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, they are entitled to adequate medical care. *Miranda*, 900 F.3d at 353-54. To establish a violation of the right to adequate medical care, a pretrial detainee must allege: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and internal quotation marks omitted). In determining whether a challenged action is objectively unreasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). "[N]egligent conduct does not offend the Due Process Clause," and it is not enough for the plaintiff "to show negligence or gross negligence." *Miranda*, 900 F.3d at 353-54.

Aguirre initially sues Farley and Kendra, who are Summit Catering supervisors, because they would not help him obtain medical treatment. While Farley took Aguirre to the medical unit, on May 7, 2024, when he initially needed medical care for his left foot, it is unclear why Aguirre later sent medical requests to Farley and Kendra instead of the jail medical staff. He has not plausibly alleged claims against either of these defendants.

4

Aguirre has also sued Dr. Foster. He asserts he only saw Dr. Foster on one occasion and Dr. Foster told him he did not have the medical resources to treat him. Here, it is reasonable to infer Dr. Foster believed Aguirre needed further treatment but took no action to secure that treatment. Giving Aguirre the benefit of the inferences to which he is entitled at this stage of the proceedings, he has plausibly alleged a Fourteenth Amendment claim against Dr. Foster for failing to provide him with objectively reasonable medical care for his left foot.

Next, Aguirre has sued Wellpath Medical, the private company that staffs the medical unit at the jail, and Summit Catering Services, the private company that provides food services at the jail. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these companies cannot be held liable for constitutional violations solely because they employ medical and food services staff at the jail. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but it "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, the plaintiff must identify an official policy or custom that caused him injury. *Grieveson*, 538 F.3d at 771. A plaintiff pursuing an official custom theory "must allege

5

facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Aguirre has not alleged facts showing that a policy, practice, or custom of Wellpath Medical or Summit Catering Services caused his constitutional rights to be violated. Therefore, he cannot proceed against them.

Aguirre has also sued Elkhart County Jail's Maintenance Department. However, he does not list the names of the individuals who work for that department. Aguirre has not stated any plausible claims against the maintenance department as a whole. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). Therefore, Aguirre may not proceed against this defendant.

Lastly, Aguirre has sued Elkhart County Sheriff Jeff Siegel. However, Sheriff Siegel cannot be held liable under 42 U.S.C. § 1983 just because he oversees the jail. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Instead, he must have some personal involvement. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) (discussing standard for supervisory liability under § 1983). Because Aguirre does not allege that Sheriff Siegel was personally

involved in any decisions regarding his medical care, he may not proceed against him on a claim for monetary damages.

However, because Aguirre asserts he still has not received proper medical care, he has stated a claim for permanent injunctive relief against Sheriff Siegel. The sheriff in his official capacity has both the authority and the responsibility to ensure Aguirre is receiving objectively reasonable medical care. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Aguirre will be permitted to proceed against Sheriff Siegel in his official capacity for permanent injunctive relief to receive objectively reasonable medical care for his left foot, to the extent required by the Fourteenth Amendment.

Aguirre has also filed a request for a preliminary injunction. ECF 5. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Aguirre alleges that he is being irreparably harmed because his left foot, which is covered in sixty percent scar tissue, causes him so much pain he can barely walk. ECF 5. Therefore, Aguirre's request for a preliminary injunction will be taken under advisement and Sheriff Siegel will be ordered to respond to the request. Aguirre will then have an opportunity to file a reply.

For these reasons, the court:

(1) GRANTS Jose M. Aguirre leave to proceed against Sheriff Jeff Siegel in his official capacity for permanent injunctive relief to receive objectively reasonable medical care for his left foot, to the extent required by the Fourteenth Amendment;

(2) GRANTS Jose M. Aguirre leave to proceed against Dr. John Foster in his individual capacity for compensatory and punitive damages for failing to provide him with objectively reasonable medical care for his left foot, in violation of the Fourteenth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Summit Catering Supervisor Carl Farley, Summit Catering Supervisor Kendra, Wellpath Medical, Summit Catering Services, and Maintenance Department;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sheriff Jeff Siegel at the Elkhart County Sheriff's Office, with a copy of this order and the complaint (ECF 1);

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. John Foster at Wellpath Medical, with a copy of this order and the complaint (ECF 1);

(7) TAKES UNDER ADVISEMENT Jose M. Aguirre's request for a preliminary injunction (ECF 5);

(8) DIRECTS the clerk to fax or email a copy of this order, the complaint (ECF 1), and request for a preliminary injunction (ECF 5) to Sheriff Jeff Siegel at the Elkhart County Sheriff's Office;

(9) DIRECTS the clerk to make a docket notation upon receiving confirmation of receipt of those deliveries;

(10) ORDERS Sheriff Jeff Siegel in his official capacity as Elkhart County Sheriff to respond to the request for a preliminary injunction and file an affidavit or declaration with the court (with supporting documentation and declarations from medical or other staff as necessary), explaining how Jose M. Aguirre's request for medical care for his left foot is being addressed in a manner that comports with the Fourteenth Amendment's requirements by **August 25, 2025**;

(11) GRANTS Jose M. Aguirre until **September 8, 2025**, to file a reply to Sheriff Siegel's response;

(12) ORDERS the Elkhart County Sheriff's Office and Wellpath Medical to provide the full name, date of birth, and last known home address of any defendant, if they do not waive service and have such information; and

(13) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sheriff Jeff Siegel and Dr. John Foster, to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 5, 2025

        /s/JON E. DEGUILIO
        JUDGE
        UNITED STATES DISTRICT COURT